**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**TIMOTHY EUGENE TAYLOR,**<br><br>**Defendant.** | **Criminal No. 23-CR-406 (RDM)**<br><br><br>**Filed Under Seal** |

**MOTION FOR LEAVE TO FILE MOTION UNDER SEAL**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully moves for an order permitting the filing of the attached Motion *in Limine* under seal, and any Order granting this motion. In support thereof, the Government states as follows:

1.      The Government seeks to preclude irrelevant and prejudicial cross-examination based on information contained in the personnel files of Metropolitan Police Department (MPD) Officers Matthew Zumbrun and Marcus Harmon.

2.      To provide the Court with proper context in relation to this motion, the Government has summarized the contents of each officer's personnel file. Like any individual's employment personnel file, this references information that is inherently of a personal nature and—as set forth in the Government's Motion *in limine*—is not the proper subject of examination in a public hearing.

3.      Further, the Government's motion references investigations into these officers that resulted in no sustained findings or in exonerations. There is no basis for these investigations to be made part of the public record.

1

4.      The Court has the inherent power to seal court filings when appropriate. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).

5.      The *Hubbard* Court identified six factors that should be weighed in determining whether to grant a motion to seal: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

6.      These factors weigh in favor of sealing this motion. Because the motion references officer personnel files—none of which have any specific bearing on this case—the need for public access is slight. This is particularly the case because any portions of that personnel file that are relevant to the officer's credibility will become part of the public record at trial or at the suppression hearing. To the Government's knowledge, the public does not otherwise have access to these officers' personnel files. And the Government has timely objected to disclosure of this information.

7.      Each officer has a legitimate and significant privacy interest in his personnel file. *See Fraternal Order of Police v. District of Columbia*, 124 A.3d 69, 77 (D.C. 2015) ("police officers subject to departmental proceedings have far more than a *de minimus* privacy interest in not being publicly identified"). Indeed, these records are protected by various provisions of District of Columbia statutes and regulations. *See, e.g.*, D.C. Municipal Regulation Title 6-B, Section 3100 (providing that personnel records "shall be established, maintained, and disposed of in a manner

2

designed to ensure the greatest degree of applicant or employee privacy while providing adequate, necessary and complete information for the District to carry out its responsibilities."); D.C. Code § 1-631.03 ("It is the policy of the District government to make personnel information in its possession or under its control available upon request to appropriate personnel and law-enforcement authorities, except if such disclosure would constitute an unwarranted invasion of personal privacy or is prohibited under law or rules and regulations issued pursuant thereto"). *See also In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001) (noting that statutory and regulatory schemes can create extraordinarily strong privacy interest in keeping records sealed).

8.     Here, sealing these filings will spare public employees from having information from their personnel files posted on a public docket when this information may have no bearing on their anticipated testimony. Should the Court ultimately disagree with the Government's position as to each officer's personnel file, these matters will become part of the public record at the April 1 suppression hearing. Therefore, there is little prejudice to the public from granting a motion to seal at this stage.

9.     ACCORDINGLY, it is respectfully requested that the appended motion be placed under seal.

Respectfully submitted,

MATTHEW M. GRAVES
U.S. ATTORNEY
D.C. BAR NO. 481052


*/s/ Katherine M. Toth*
KATHERINE M. TOTH
O.H. Bar No. 100082
Special Assistant United States Attorney
Paul V. Courtney

3

D.C. Bar No. 1034252 / N.Y. Bar No.
5392337
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-252-2406 (Toth)
202-252-1719 (Courtney)
Katherine.Toth@usdoj.gov
Paul.Courtney@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal No. 23-CR-406 (RDM)** |
| **v.** | |
| **TIMOTHY EUGENE TAYLOR,** | **Filed Under Seal** |
| **Defendant.** | |

**ORDER**

This matter having come before the Court pursuant to the application of the United States to seal the Government's Motion *in Limine*, the Court finds that because of the potential for the disclosure of information from an individual's non-public personnel file, the United States has established that a compelling governmental interest exists to justify the requested sealing.

IT IS THEREFORE ORDERED that the application is hereby GRANTED, and that the Motion is sealed until otherwise ordered by the Court.

Date: _____

_____
Hon. Randolph D. Moss
United States District Court Judge

cc:   SAUSA Katherine Toth
      AUSA Paul Courtney
      Federal Defender Kate Adams, Esq.
      Federal Defender Elizabeth Mullin, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 23-CR-406 (RDM) |
| v. | |
| TIMOTHY EUGENE TAYLOR, | |
| Defendant. | |

## OMNIBUS MOTION *IN LIMINE*

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves *in limine* to: (1) preclude certain cross-examination, extrinsic evidence, argument, or other references regarding allegations of misconduct by certain officers that are members of the Metropolitan Police Department (MPD) 7th District Crime Suppression Team (7D CST); and (2) limit the cross examination of MPD Officers Marcus Harmon and Matthew Zumbrun. Consistent with its typical practice, the government disclosed information from the personnel files of the two MPD officers whom the government intends to call at the suppression hearing in this matter as well as the personnel file of one MPD officer who was involved in the stop and arrest of the defendant but that the government does not intend to call at the suppression hearing. The disclosed information is not the basis for proper cross-examination. That is, these matters are not relevant to each officer's bias or credibility, nor do they bear on any other fact relevant to this matter. This is particularly the case where the officers' interactions with the defendant and crime scene are substantially captured on multiple officers' body-worn cameras. For the following reasons, the Court should not permit cross-examination based on information in each officer's personnel file.

## PROCEDURAL BACKGROUND

On November 16, 2023, a grand jury returned an indictment charging the defendant with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1), one count of Unlawful Possession With Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Phencyclidine, also known as PCP, in violation of Title 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and Carrying a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of, a Drug Trafficking Offense, in violation of Title 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 8).  A suppression hearing is currently scheduled for April 1, 2024.

## FACTUAL BACKGROUND[1]

On August 11, 2023, members of the Metropolitan Police Department's 7D CST were patrolling in a marked vehicle in full uniform along the 300 block of Livingston Terrace Southeast, in Washington, D.C. This area is known to be a high-crime area, where crimes with firearms and gunshots are routinely reported.

As the officers were driving, they noticed the defendant, Timothy Eugene Taylor, and another male standing out in front of 4329 3rd Street Southeast. The defendant was wearing a black satchel bag across his torso. The bag was hanging by his right hip, and it was facing the street. Officer Matthew Zumbrun, the driver of the marked vehicle, had an unobstructed view of the defendant and noticed a distinct "L-shaped" bulge protruding from the bag. Based on this observation, he told the other officers in the car that he thought that the defendant had a gun. Officer Zumbrun passed the defendant and made a U-turn in order to make contact with him. When

---

[1] The government anticipates proving the following facts at the suppression hearing and trial in this matter.

officers pulled up next to the defendant, they noticed that he had moved the satchel to the left side of his body (away from the officers) and was turning his body so that the officers could not see the left side of his body. Officers rolled down the window and asked the defendant if he had a gun in his bag and if he would fold his bag in half. The defendant replied, "No, I live right here"[2] and pointed to 4329 3rd Street Southeast. Officers then exited the vehicle to get a better look at the satchel, and the defendant immediately fled into the building. Officers ran after the defendant.

Officer Marcus Harmon was the first officer in the door to the building after the defendant. Officer Harmon followed the defendant up one flight of stairs to the second-floor hallway landing. The defendant was stopped in front of an apartment door, and he turned to face officers with his back against the door. Officers Harmon and Anel Salkanovic told the defendant that he was being stopped and put handcuffs on him. Officer Harmon then frisked the defendant's satchel and immediately felt a hard object that he recognized to be a firearm. Officer Harmon can be heard announcing, "7A," the officers' predetermined codeword for a firearm.



***Figure 1 - Screenshot from Officer Harmon's Body-Worn Camera Footage***

---

[2] Notably, after being processed at the Seventh District Station, the defendant provided a different location—4010 3rd Street Southeast, Apartment 201—as his address.

Because he had felt an object consistent with a firearm, Officer Harmon opened the satchel and found a loaded Smith and Wesson M&P 2.0 handgun with serial number NCU9682. The firearm recovered from the defendant's satchel had one chambered round of ammunition and an additional 21 rounds of ammunition in its extended magazine.



*Figure 2 – Screenshot from Officer Harmon's Body-Worn Camera Footage*

Also recovered in the defendant's satchel were two small and one large vials of amber liquid with an odor consistent with liquid phencyclidine, commonly known as PCP.

The defendant was arrested for Possession with Intent to Distribute a Controlled Substance While Armed. At the time of his arrest, the defendant had previously been convicted of crimes punishable by more than a year's imprisonment and had knowledge of that fact.

## BACKGROUND REGARDING MPD'S 7D CST INVESTIGATION

On September 30, 2022, then-MPD Chief Robert Contee announced an ongoing internal investigation into members of MPD's 7D CST. Specifically, the investigation concerns officers failing to make arrests despite confiscating illegal firearms and writing police reports inconsistent

with their body-worn camera footage. This investigation was publicly described at a press conference held by MPD on September 30, 2022 (available at https://www.youtube.com/watch?v=rGfGnWZLsZc). The investigation is ongoing.

## BACKGROUND REGARDING MPD'S PPMS AND CADRPTS INFORMATION

MPD maintains the Personnel Performance Management System (PPMS) to electronically track administrative matters involving its officers, including officer disciplinary matters. MPD started to develop PPMS in 1999, and in 2001 PPMS was more fully implemented in conjunction with a Memorandum of Agreement with the Department of Justice to reduce the use of excessive force.[3] PPMS was not designed as a discovery tool for criminal or other litigation. Rather, it was designed to be:

> [U]sed regularly and affirmatively by MPD to promote civil rights integrity and best professional police practices; to manage the risk of police misconduct, and potential liability thereof; and to evaluate and audit the performance of MPD officers of all ranks, and MPD units, subunits, and shifts. It shall be used to promote accountability and proactive management and to identify, manage, and control at risk officers, conduct, and situations.

MOA at ¶ 106.

However, after its inception, PPMS was expanded into a tool that attempts to track all officer-misconduct investigations, even if they are unrelated to excessive force. Thus, PPMS now contains information about the wide spectrum of conduct for which MPD officers are subject to discipline. MPD officers may be disciplined for unintentional acts (such as being involved in a car accident or losing one's badge or radio), minor infractions (such as failing to cut one's hair, missing

---

[3] Memorandum of Agreement Between the United States Department of Justice and the District of Columbia and the District of Columbia Metropolitan Police Department, June 13, 2001. Available online at http://www.dcauditor.org as an attachment to the 2016 report entitled "The Durability of Police Reform: The Metropolitan Police Department and Use of Force 2008-2015."

a scheduled CANS appearance, wearing an improper uniform for a particular assignment, or parking in an unauthorized parking spot at an MPD facility), and serious infractions (such as using excessive force, knowingly making a false statement, or engaging in criminal conduct). *See generally* MPD General Order 120.21.  In addition, PPMS contains information about non-disciplinary matters that MPD must track administratively, such as vehicle pursuits.

In many cases, individual misconduct investigations contain information about multiple officers, even if only one officer is a potential witness in the case at hand. This is because early versions of PPMS were used primarily to track the outcome of an overall matter, not the outcome of the investigation related to any individual officer. Any given case will list the target officers along with any witness officers and other officers with a connection to the investigation.

Particularly in older cases, the data contained in PPMS may also include misleading notations of sustained findings of misconduct. Until 2013, PPMS did not track individual findings against individual officers.[4] Thus, before 2013, if just one allegation was sustained against any officer mentioned in an investigation, the entire case was considered "sustained."[5] To use an example from PPMS, an officer testified at trial that he lost his notebook. The defendant filed a complaint with MPD alleging that the officer had falsely testified that he had lost his notebook. PPMS showed a sustained allegation for making a false statement. However, when the underlying

---

[4] The primary focus of the PPMS before 2012 was to track the timing of misconduct investigations to make sure the disciplinary process was timely under the general orders and collective bargaining agreement.

[5] Before February of 2017, the government, based on language approved by MPD, had represented that the ability to track individual outcomes against individual officers in PPMS did not arise until the spring of 2015. However, in January of 2017, the government learned from MPD and members of their information technology ("IT") staff that this capability may have been added to PPMS as early as the fall of 2012. In December 2018, the government confirmed directly with MPD's IT staff that PPMS started tracking findings against individual officers in 2013.

file was reviewed, it revealed that MPD sustained a finding against the officer for failing to maintain a notebook, while finding insufficient evidence of a false statement. The PPMS entry was technically correct under then-prevailing conventions because there was a sustained finding in the case, however, it was misleading because it did not also note that there was an insufficient factual finding for the untruthful-statement allegation.

Moreover, PPMS focuses on the immediate outcome of the case by the officer's immediate chain of command or the Internal Affairs Division, and generally does not capture the results of any subsequent appeal, including reversal by the Chief of Police or her designees.[6] In addition, where a civil trial, settlement agreement, or decision by the Performance Review Board changes an investigative outcome, that information is also generally not captured in the PPMS.

***The Officers' Personnel Files***

Pursuant to its usual practice, in advance of the April 1, 2024 suppression hearing in this matter, on March 15, 2024, the government produced a report documenting Officers Harmon, Zumbrun, and █████████ disciplinary records from PPMS. These reports are referred to as "CADRPTS." CADRPTS include two categories of information: (1) all sustained findings against an officer from PPMS (regardless of how trivial); and (2) any investigation into an officer's conduct that was pending from the time of arrest to the time of the hearing at which the officer is anticipated to testify. With respect to the second category (pending investigations), information will be included in the CADRPTS for these investigations even if the investigation has resolved favorably for the officer prior to the hearing. These investigations range from the mundane (routine

---

[6] In 2014, MPD added the capacity to track the outcomes of cases referred to the Disciplinary Review Division (DRD). Thus, in a limited number of cases, the PPMS data may include the outcome of a DRD ruling.

use of force reports) to serious (secured investigations into serious misconduct). As a result, CADRPTS routinely contains significant amounts of information that is not impeachment material within the meaning of *Giglio*.

Officer Harmon's CADRPTS █████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



Officer Zumbrun's CADRPTS



None of these incidents are the proper subject of cross-examination.[8]

## **ARGUMENT**

The defense should be precluded from cross-examining officers who are not involved in the investigation into 7D CST about the investigation or their colleagues' involvement in the investigation. Additionally, because all of the findings have no bearing on the officers' credibility, the defense should be precluded from cross-examining Officers Harmon and Zumbrun about incidents in which no findings were made against the officers and incidents where there were findings made against the officers.

1. **The defense should be precluded from cross-examining officers not involved in the investigation into 7D CST about the investigation.**

---

[8] In some cases, courts have permitted cross-examination of officer witnesses based on pending investigations into their conduct under a theory that the pending investigation might create a motive to curry favor with the government. *See, e.g.*, *United States v. Wilson*, 605 F.3d 985, 1006 (D.C. Cir. 2010) (noting that the fact that witness "was being investigated at all provided that potential motive," such that existence of investigation was found to be a basis for bias cross-examination). The government is unaware of any currently pending investigations into these officers.

In this case, neither of the officers the government intends to call—Officers Harmon and Zumbrun—are implicated in MPD's 7D CST investigation. ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ Any line of questioning of these officers about an investigation that does not involve them has no bearing on their credibility and risks confusing and misleading the Court.

### a. Legal Framework

"The Sixth Amendment's Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004). The Sixth Amendment "guarantees a defendant the right to cross-examine the witnesses against him or her, and it is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010) (citation omitted); *United States v. Young*, No. 12-CR-00042 (BAH), 2013 WL 12430555, at *2 (D.D.C. Apr. 22, 2013).

A defendant's right to conduct cross-examination is not unfettered, however. "Despite the guarantees of the Sixth Amendment's Confrontation [C]lause, 'the district court nonetheless has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses.'" *United States v. Watson*, 409 F.3d 458, 462-63 (D.C. Cir. 2005) (quoting *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004)); *United States v. Hall*, 613 F.3d 249, 255 (D.C. Cir. 2010) ("This Sixth Amendment right, however, does not require a trial court to permit unlimited cross-examination by defense counsel, but rather requires the court to give a defendant a realistic opportunity to ferret out a potential

source of bias.") (citations and internal quotation marks omitted). In deciding the boundaries of cross-examination, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Del. v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431 (1986); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); Fed. R. Evid. 611 ("The court should exercise reasonable control ... so as to ... avoid wasting time; and [ ] protect witnesses from harassment or undue embarrassment."). The Sixth Amendment Confrontation Clause "does not require a trial court to permit unlimited cross-examination by defense counsel, but rather requires the court to give a defendant a realistic opportunity to ferret out a potential source of bias." *See, e.g.*, *United States v. Hall*, 613 F.3d 249, 255 (D.C. Cir. 2010).

### b.  Application to Officers Harmon and Zumbrun

Because Officer Harmon and Officer Zumbrun are not implicated in the investigation into 7D CST, and the 7D CST investigation does not involve the defendant nor his August 11, 2023 arrest, there is no probative value to any cross-examination of these witnesses regarding the investigation. The only function of any questions would be to confuse the issues or mislead the Court.

The potential for undue prejudice is particularly high when questioning agency witnesses about the misconduct of other employees at that agency. *See United States v. Zanders*, 16-cr-197 (RC) (ECF No. 103); *United States v. Gonzalez-Vasquez*, 219 F.3d 37 (1st Cir. 2000) (upholding

decision to bar cross examination into "broad inquiry into the corruption of third-party police officers who were not appearing as witnesses"). In *Zanders*, the defendant sought to exclude test results from a Drug Enforcement Administration laboratory because the government's forensic expert used equipment that had been verified by another scientist under investigation for unrelated misconduct. *Id.*, at *2-6. The court found that the defendant had "simply not established a connection between that misconduct and the test results [in this case] that is significant enough to call into question the reliability of the Government's evidence." *Id.* at *10. The court granted the government's motion *in limine* to preclude cross-examination on the alleged misconduct, finding that the misconduct was only "minimally probative" given that there was no evidence of any misconduct by the particular agency witnesses or any evidence of tampering, and there was other corroboration of the agency witnesses' work, whereas the risk of unfair prejudice and confusion was "significant." *Id.* at *12-13. The court also found that "allowing cross-examination on the misconduct…would require the Court to open the door to responses and rebuttals from the Government" and "[s]ignificant time at trial would need to be devoted to these issues, all of which are significantly attenuated from the charges." *Id.* at 13.

Here, as in *Zanders*, there is no significant connection between the alleged misconduct of the 7D CST investigation and the case at issue. None of the officers implicated in the 7D CST investigation are going to testify, and the allegations at issue in the investigation do not involve the defendant. Even if there were some minimal probative value to the 7D CST investigation, it is substantially outweighed by nearly all of the reasons outlined in Fed. R. Evid. 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, and wasting time. The potential prejudice arising from this line of questioning would be significant. As the court feared in *Zanders*, permitting questions about the 7D CST investigation would likely lead to a time

consuming mini-trial on allegations that have nothing to do with the case at hand, and confusing the issues that are relevant. The risk of this prejudice, confusion, and delay substantially outweighs any probative value—of which there is none—that any line of inquiry into the 7D CST investigation may hold.

Furthermore, because the investigation is ongoing, the only legitimate avenue of cross-examination even to a witness who was actually under investigation would be testimonial bias. Such cross would be admissible on a theory that the witness may be motivated to testify falsely against the defendant in order to curry favor with the government, in light of the pending investigation. *See, e.g.*, *United States v. Wilson*, 605 F.3d 985, 1006 (D.C. Cir. 2010) (noting that the fact that witness "was being investigated at all provided that potential motive," such that existence of investigation was found to be a basis for bias cross-examination). However, because the witnesses the government intends to call are not under investigation, there is no potential for a motive to curry favor and such inquiry is entirely inappropriate. Also, the witnesses who the government does intend to call at the hearing do not seem to be aware of all of the subjects of the investigation.

While concerning, the 7D CST investigation has no relevance in this case. It has no bearing whatsoever on Officer Harmon's or Officer Zumbrun's credibility. There is significant risk that cross-examination regarding the investigation would confuse the relevant issues. The Court should preclude any such inquiry.

**2. None of the incidents outlined in Officers Harmon and Zumbrun's CADRPTS are the proper subject of cross-examination.**

The officers' personnel files, described above, are not the proper subject of cross-examination at the suppression hearing.

### a. Legal Framework

As discussed above, while the Sixth Amendment guarantees a defendant the right to meaningful cross-examination, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). "Despite the guarantees of the Sixth Amendment's Confrontation [C]lause, 'the district court nonetheless has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses.'" *United States v. Watson*, 409 F.3d 458, 462-63 (D.C. Cir. 2005) (quoting *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004)). "'It must be cautious, however, particularly where a party is seeking to impeach a witness whose credibility could have an important influence on the outcome of the trial.'" *Id.* at 463 (quoting *Whitmore*, 359 F.3d at 615-16); *United States v. Hall*, 613 F.3d 249, 255 (D.C. Cir. 2010) ("This Sixth Amendment right, however, does not require a trial court to permit unlimited cross-examination by defense counsel, but rather requires the court to give a defendant a realistic opportunity to ferret out a potential source of bias.") (citations and internal quotation marks omitted); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); Fed. R. Evid. 611 ("The court should exercise reasonable control . . . so as to . . . avoid wasting time; and [] protect witnesses from harassment or undue embarrassment.").

Under Rule 608(b), a witness can be cross-examined regarding prior non-criminal instances of misconduct if those instances are probative of truthfulness or untruthfulness. Fed. R.

Evid. 608.  The Advisory Committee Notes accompanying Rule 608(b) suggest how a court should exercise its discretion in managing such evidence:

> Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time. Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury.

Fed. R. Evid. 608(b), advisory committee notes. *See Tome v. United States*, 513 U.S. 150, 160 (1995) (noting that the Advisory Committee Notes are "a useful guide in ascertaining the meaning of the Rules," and "a respected source of scholarly commentary"). Questions about specific instances of misconduct that have no bearing on a witness's truthfulness are not permitted under Rule 608. *See, e.g.*, *United States v. Powell,* 86 Fed. App'x. 612, 615 (4th Cir. 2004) (affirming court's refusal to permit cross-examination about a witness's termination because it did not impact the witness's veracity); *see also United States v. Beltran-Garcia,* 338 Fed. App'x 765, 768 (10th Cir. 2009) (affirming court's refusal to permit cross-examination concerning allegations of officer misconduct arising from improper arrest and illegal search). Further, instances of past conduct cannot be proven by extrinsic evidence. *See United States v. Wilson*, 605 F.3d 985, 1014 (D.C. Cir. 2010) ("[S]pecific instances of untruthfulness are not provable by extrinsic evidence under Rule 608(b).")

As an initial matter, the incidents in which no findings were made against Officers Harmon and Zumbrun are not appropriate fodder for cross-examination. "[C]ross-examination about complaints or the conduct underlying them is improper unless there is some basis for inferring the soundness of the allegations against the officers," such as, "where the alleged misconduct had led to the officer's suspension." *United States v. McCallum*, 885 F. Supp. 2d 105, 117–18 (D.D.C.

2012), *aff'd,* 721 F.3d 706 (D.C. Cir. 2013). That routine use of force investigations were opened in cases in which these officers were required to use force to effect arrests and found to have been justified in doing so have no bearing on the officers' credibility or any fact at issue in this case. Nor does the fact that complaints have been filed with OPC and dismissed or resolved in these officers' favor. *See United States v. Taylor,* 417 F.3d 1176, 1178–81 (11th Cir. 2005) (affirming trial court's decision to bar cross-examination of officers for unproven citizen complaints that officers had planted evidence). Furthermore, complaints against an officer for which the officer is not aware also does not have any bearing on an officer's credibility and/or the officer's potential ability to curry favor with the government. *Cf. Wilson*, 605 F.3d at 1006.

All of the remaining incidents in which some manner of finding was made against these officers also have no bearing on their credibility. ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ are not relevant to either Officer Harmon's or Officer Zumbrun's credibility. ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

Courts have routinely prohibited cross-examination into ████████████████████ ████████ under similar circumstances. █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

To the extent the Court were to find that this incident bears on Officer Harmon's or Officer

Zumbrun's credibility, any probative value is substantially outweighed by its prejudicial effect. █

████████████████████████████████████████████████████

Should evidence of ████████████████ be introduced, the government would need to contextualize such evidence with facts regarding the circumstances surrounding the ████████. See *Beltran-Garcia*, 338 F. App'x at 772 ("Because the misconduct does not obviously reflect on [the officer's] current character for truthfulness, its introduction would more likely required extended explanation increasing the risk of jury confusion.") Specifically, the government would likely seek to introduce evidence of the two events: ███████████████████



████████ The suppression hearing—which should focus on whether the defendant was in possession of a firearm and PCP—will turn into several separate hearings regarding incidents that have absolutely no bearing on this case. Rule 608(b) is intended specifically to avoid such distractions. See, e.g., *United States v. Smith*, 232 F.3d 236, 241 (D.C. Cir. 2000) (explaining that Rule 608(b) "embod[ies] specific concerns that, although relevant, evidence of prior acts will either unduly prejudice and overpersuade the jury . . . or waste time by sanctioning countless distinct credibility mini-trials within the trial proper.")

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that the government's Omnibus Motion *in Limine* be granted for the foregoing reasons.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     */s/ Katherine M. Toth*
KATHERINE M. TOTH
O.H. Bar No. 100082
Special Assistant United States Attorney
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No.
5392337
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-252-2406 (Toth)
202-252-1719 (Courtney)
Katherine.Toth@usdoj.gov
Paul.Courtney@usdoj.gov